al. Are you ready? Good morning, Your Honors. May it please the Court, my name is Kenton Bryce. I'm an associate with the law firm Crispin, Kelly & Clark in Highland Village, Texas, and we represent plaintiff appellants in this appeal today. Plaintiffs are appealing from the United States District Court for the Northern District, Texas, Dallas Division's decision ordering this case dismissed and compelling arbitration on AmeriPlan's motion to compel arbitration. However, as you will find on a de novo review and as stated in the briefs and on oral argument today, the parties never agreed to arbitrate this case. One, the parties did not intend to incorporate the subject arbitration clause into their already existing written, signed agreements, and two, even if somehow this Court finds that the parties did intend to incorporate this arbitration clause into their already signed, written agreements, it does not supersede nor does it obviate the already mandatory dispute resolution clause mandating jurisdiction in Dallas County, Texas. Furthermore, Your Honors, before I move on to my two points, the Central District of California has already ruled on the law in this case. Two years ago, AmeriPlan motioned a transfer venue from California to Texas, citing the specific mandatory form selection clause as the reason. And that court, in its order, stated, quote, because the form selection clause is mandatory under the plain language of the sales director contract, the contract requires litigation in Dallas County, Texas. However, now, a year later, AmeriPlan moved to dismiss the case in favor of arbitration, totally ignoring what they have already relied on before. The law has already been established. And now we're here in front of this honorable court. Is there a case, though, that we have in our circuit that allows you to use a form selection clause and then you trigger the arbitration, so you get to pick your forum to adjudicate your arbitration, a decision? Your Honor, that decision, I'm not clearly sure which exact decision you're talking about. However, the decisions that have become before this circuit, as well as the district courts in Texas, the facts in those cases, the arbitration clause, existed at the time the parties contracted. We're not arguing that a party cannot incorporate an arbitration clause by reference into an agreement. However, that arbitration clause must exist at the time it is incorporated by reference. And that goes to my first point. The parties never intended to incorporate the arbitration clause by reference into their original agreement. The arbitration clause came through an amended policies and procedures manual six to 16 years after the parties had entered into their original agreements. But they had agreed that the policy manual could be amended. I mean, why is that, why did it not get incorporated? Your Honor, a policies and procedures manual, or to back up to the law on documents incorporated by reference, a document incorporated by reference is only incorporated by reference for the specific intended purposes of that document. It's not a blank check for a party to write in any provision they wanted to. This is established by the Texas Appellate Court in Dallas, which said, quote, is a general principle of contract law that reference to a document for a particular purpose incorporates that document only for the specified purpose. And so then the question becomes, what is the purpose of the policies and procedures manual? And according to contract construction and contract interpretation under Texas law, you must look to the four corners of the original agreements to see what the sales director contract or the PPM at the time stated its purpose was. However, AmeriPlan, it's their burden, has not shown what the PPM said, if anything, at the time the parties entered into their original agreements. The record is void of any PPM or policies and procedures manual. But do you have anything to point to in the policy manual that says it was not intended to incorporate an arbitration clause? Your Honor, you look to the sales director agreements at the time, or all the agreements together as a whole, at the time the parties entered into their agreement. Well, now that's true if you're, if the cases you cite involve situations where the parties are, have, take several steps contemporaneously or serial to arrive at one agreement. Here we've got a replacement agreement. We've got to substitute an amendment to the original agreement. And my understanding is when you have an amendment to an original agreement, that amendment applies at least to the extent that it's not, that it's inconsistent with the original agreement. In other words, if, if the original agreement and the amendment are inconsistent, the amendment controls. That's, that's the general rule, isn't it? Your Honor, I would respectfully disagree with that general rule. But to your question, there's two points that are raised. Well, now what do you disagree with about that rule? That if you have a contract and you amend it, that the, that the provisions of the amendment supersede the original contract, if they're inconsistent? Your Honor, if they're inconsistent, if two provisions of a full agreement or a total agreement, I'll, I'll get to the first point after I answer that. I want to answer my question first. Yes, sir. That amendment under Texas law, if there's a conflicting provision with the original agreement, with the original clause, does not automatically supersede or obviate. The court must run through the Texas rules on harmonizing a potential conflict in a contract. And those three rules are that first. But wait a minute. We're not trying to harmonize necessarily. When you amend a contract, your object is to make something different. It's not to harmonize. That's correct, Your Honor. And let me back up real quick. The parties never intended to amend the contract through the PPM. The contract. But the sales agreement's still in effect, right? And that, the sales agreement or the broker agreements, that's what had the dispute resolution clause, right? That's correct. They had to be changed in writing, agreed to by both parties, whereas this policy manual could be changed without that requirement. That's correct, Your Honor. How do you interact with those two different documents and the two different amendment procedures? That's correct, Your Honor. And that's where I was hoping to funnel his question, is the parties never agreed to amend the dispute resolution procedure containing the original agreement because there's not a signed, duly executed written amendment to the original agreement. Instead, a merit plan unilaterally amended the policies and procedures manual, a document incorporated by reference for a specific purpose into the sales director agreement for the terms, conditions, policies, and procedures of a merit plan. That is not the horizontal agreement between the parties. That is the rules of the merit plan business. But I mean, the parties, the plaintiffs agreed to that in advance in the sales agreement that the policy manual was incorporated and it could be changed if they were given sufficient notice, which they were. That's correct, Your Honor. Actually, the sales director agreement says it can be changed without notice, that the policies and procedures manual, the record shows that can be modified at any time without notice and you just, and it actually specifically says you agree to obtain and abide by the policies and procedures manual. However, in that same agreement, there's a dispute resolution procedure that's four paragraphs long, all caps, blocked off text, totally separate from the rest of the typeset of the other agreement, of the rest of the agreement that says, as the Central District of California found, there's a mandatory judicial forum for any claim, controversy, or dispute. And the arbitration clause, which a merit plan created six to 16 years later, says the exact same thing. Any claim, controversy, or dispute must go to arbitration. In your argument, is the reason that the amendment doesn't step in to displace the other language that's in bold in the sales agreement because the amendment is not to the sales agreement? The sales agreement stays as the sales agreement, so it's the other, the manual that's been updated, and so then you have to harmonize two under Italian cowboy or whatever it's called. That's correct, Your Honor. Is that your position? That's exactly correct, Your Honor. Because the sales amendment agreement wasn't amended. It's only the manual that was amended. That's correct, Your Honor. Okay. And the manual is an unsigned document. Would you agree that if the sales agreement itself had been amended, that indeed it would displace the prior bold language? Yes, definitely. That's contract 101. So, it is, if an agreement is amended, then the new, the amendment displaces, but that's where you have one document. Is that the difference? That's correct, Your Honor. Okay. And this is an amendment to a document incorporated by reference. And as Texas . . . What's your best case that the rule is different if a document is incorporated by reference as agreed to by the parties, as opposed to amending the original contract? What's your best case for that? Budd versus Max International. That case came out of Dallas last year, and that court found, and it's similar facts, little bit different, but similar to the extent of this question. And that court found that because no arbitration clause existed in a policies and procedures manual at the time the parties intended to enter into their agreements, therefore that arbitration clause was not incorporated by reference. And if it had . . . Is that in your brief? Yes. Yes, Your Honor. That is. I'm sorry. Go ahead. I'm sorry. If it had, in fact, displaced the other language, then would the case of the California court would have made the arbitration decision, is that correct? If we assume that the sales agreement language was displaced . . . Yes. And that's why we believe AmeriPlan didn't bring it up before the California District Court. It only served their purpose after we filed our motion for class certification that they realized we're in a pickle. Because that's the very language that would have been abrogated. That's correct, Your Honor. But instead they relied upon it. So they apparently think it still applies, too. Exactly. Well, but let me ask you this. Why is it necessarily inconsistent with the original agreement to have . . . since the amendment to the policy manual did not have any contrary language about a forum selection clause, why wasn't it . . . or why was it not consistent to have the forum selection clause so that it could be used for their purpose it was? I mean, a party may need to go to court to enforce the arbitration clause. So there's a plausible reason, is there not, for having a forum selection clause in the original . . . in an agreement with an arbitration clause. The answer to that is, again, twofold. First, according to the record and the agreement, the way it's written, both the arbitration clause and the mandatory forum selection clause cover the exact same dispute, claims, or controversies. Under the cases which the merit plan has cited, the forum selection clauses, which are in existence at the time of the arbitration clause, where the courts have to harmonize an arbitration clause and a forum selection clause, those forum selection clauses say any suit or proceeding goes to litigation here. But any claim, controversy, or dispute goes to arbitration. Artifacts are different. The parties covered the exact same thing to go to litigation and go to arbitration. And if you harmonize them and say that the forum selection clause will remain in effect if a party has to suit and enforce the arbitration clause, why can't you harmonize it like that? Your Honor, that is not what the agreements state. And also, this Court, in Klein v. Neighbors Drilling, last year, found . . . well, first, Wetzel v. Sullivan and King says no party is under a duty to arbitrate unless by clear language he has previously agreed to do so. And it must clearly appear that the intention of the parties was to submit their dispute to arbitrators. And this Court, following that in Klein v. Neighbors Drilling last year, said, and I quote, an agreement that allows for disputes to be solved through either an arbitrable or judicial forum can hardly be considered a valid agreement to arbitrate. Yeah, but neither of those cases involved an amendment to a contract. Those were all separate negotiations all looking toward one contract. You don't have a replacement provision or an amendment involved in any of those cases. Your Honor, to get there, you would have to find that there is an amendment to the actual underlying agreement by the PPO. You absolutely would. Under Klein v. Neighbors Drilling . . . sorry, Your Honor. What was your question? Assuming that there is an . . . it did amend it, assuming that that is the case, was there an agreement to amend? Is . . . do you argue that the click-through people didn't agree to it or something? Is that an argument, a backup argument you have? I'm trying to . . . If a merit plan is relying on the fact that they click through a website to somehow amend their already established document through the New Policies and Procedures Manual, the actual sales director agreement goes against that argument. Because in that agreement it says that the sales directors are, through the contract, which is the law of the parties, are obligated to obtain and abide by the new policies and procedures. So if they did not click I accept, then they're in violation of their sales director agreement. A merit plan created an impossible situation for these parties to know what they contracted for if the PPM can amend their already written, signed agreements. Because if they don't click I accept, they're in violation of their already . . . So that's how you read it, by clicking I accept? I mean, you could read it and say, no, I'm not going to accept, couldn't you? Correct. And if you do that, then you're in violation of your sales director agreement and you could be terminated for cause. And is it your position that as your last fallback that something about that because they don't work there anymore, it doesn't apply to them? Yeah, that's a very complex issue and that comes from a case out of the Utah District Court, which is the same type of multilevel marketing situation with Quickstar, where Quickstar had terminated a bunch of IBOs and they said, you've got to go to arbitration. The court there found, said that the arbitration clause does not apply to active sales directors. Only applies to, or only applies to active sales directors, not terminated. If we accept that, this would never apply to a wrongful termination case because by that time, the person will not be active at the time, at the time the suit is filed. In other words, he's fired, no matter how wrongful it is, he can't rely on the contract to try to get relief. Your Honor, if he, they're independent contractors, so this really isn't a wrongful termination case. This case is about failure to pay residual commissions after they're terminated. Well, it's related to that, though. That's correct. And so, in that scenario, yes, but a mayor plan drafted it, all interpretations get construed against the drafter. But could a former, whatever they are, independent contractor, sue on the sales agreement if, if, would they be still allowed to, or is it, would your position say they couldn't sue on the sales agreement because it wouldn't apply to them? Well, the sale, if they, if it was for the commissions that are still due to them as contracted for, and then a mayor plan terminates them without cause, the sales agreement, we contend, this is what this whole case is about, you still get your lifetime residual commissions. And so if you don't get them, you sue them. So that provision applies to former people, but the arbitration provision doesn't? The arbitration provision would apply to active brokers and IBOs only. So if the arbitration, if the arbitration clause applies, somebody who's wrongfully terminated would have no, no way to get relief under that clause? They would not have to go to arbitration. They would have to abide by the mandate. No, no, no, no, no. I said if the arbitration clause applies, they would have no way to get relief under that, under that, under that clause, is that right? That's correct, Your Honor. Okay. Thank you. Thank you. Okay. Mr. Yanoff. Yes, sir. It plays the court. This case involves independent contractors who don't want to abide by the terms of their contract and instead want this court to rewrite the contract to make the terms more fair to them. I want to correct a couple of things, some misstatements that were made. The Budd case out of Dallas expressly says that a unilateral amendment provision like was in this contract can be used to later enact an arbitration provision through policies and procedures. That's exactly what the Budd case was. The Budd case went on to say that if you do it that way, because it's a later enacted provision, you have to satisfy Halliburton savings clauses because it was not in the original agreement. It was later enacted. And the court went on to say in that case that the arbitration provision satisfied Halliburton savings because it was prospective only and it provided notice to the other side before terminating, exactly like this arbitration provision here. Judge Elrick? They would have to terminate within the 10 days to not get stuck with the arbitration. Is that your position? Well, the termination provision gives notice to the other side to give them an opportunity to go ahead and pursue arbitration so that it is still a bilateral promise. It provides notice. Right, but if I don't want to accept your bilateral promise, then I have to just get out of the sales agreement at that point, right? You need to either . . . are you talking about from the company's perspective or . . . Assuming that there's a person who doesn't . . . no, the broker person doesn't want to accept the promise, says, I'm never going to sign an arbitration agreement. They just put one in my contract. I have 10 days in which to refuse. Is that what happens? Or they never have a chance to refuse? No, the reasonable notice provision is before it will be terminated. It's in order to ensure that it is truly a bilateral promise and that it binds both sides so that the company cannot decide for someone who is about to pursue a claim, the company can't decide for that individual, well, I don't want to arbitrate that, so I'm just going to terminate it right now, immediately, and cut off your arbitration right. I'm asking if I don't want to accept that, but I have to click through on the ban book. What are my options? You have to go back to the original contract and ask, what did you contract for? What you contracted for originally was that the PPNM was incorporated into the agreement from the start. It was always a part of this contract. But you didn't contract for arbitration originally. That was not . . . because you, in fact, contracted in bold letters to something else. You contracted for venue selection in the particular state court. So you can't say, well, I knew that one day they might amend, and I really was contracting for arbitration. I was actually contracting for something contrary. So when do you have time to give consideration for the promise so that it's not illusory as the employee? Well, the time to dispute or not enter into the contract giving AmeriPlan the unilateral right to amend would have been at the time at the inception of the contract, because there was a meeting of the minds. Could they amend for anything? Could they amend to say, we're only going to pay you half of what the contract price in the sales agreement is, or we're not going to pay you at all? Could they amend to say you have to . . . some owner's condition? Could they amend to say anything, and there's already consideration for it? Or at some point, does it vitiate the original agreement? I think to answer your question concisely, I think there is a point where it would vitiate the agreement and become illusory or unconscionable for that matter. I think it could come to that point. But you bring up an interesting point on the compensation structure. The compensation structure is not in the BAA. There is no compensation structure in the BAA. When these brokers entered into the agreement, the only method by which they could be paid compensation under a structure is through the PPM. But there is in the broker agreement this very comprehensive dispute resolution program, which is really much more than just a form selection clause, and it says that . . . and that's the document that changes have to be made by both parties in writing. So if you can change something that's in that broker agreement through this policy manual where the agreements don't have to be changed in writing, doesn't it eviscerate that requirement that those changes have to be by agreement in writing? It does not. What the original agreement contains in the BAA, the SDA contains it as well. For most of them, it does not contain it for GRRSCO. It contains non-binding mediation, which is the preliminary try-to-resolve-it provision, and then it contains a form selection clause. And that form selection clause says you have to submit for legal proceedings . . . all of those agreements use the phrase legal proceedings, which is important. In legal proceedings, you have to submit to the non-exclusive jurisdiction of Dallas County. And this court has held . . . to answer your question, Judge Elrod, this court has not held once, but twice at least, that those provisions are easily harmonized when you also have an arbitration provision because . . . Right. I'm looking at the sales agreement, the earlier dispute resolution provision, and it doesn't just say that any proceeding has jurisdiction in Dallas or a federal court in Texas. It says, with respect to any claims, controversies, or disputes which are not finally resolved through mediation, sales director hereby submits to the non-exclusive jurisdiction of state or federal court in Dallas. So that's more than these provisions that this court's already looked at that says, well, the proceeding has to be in a certain court. I've been saying the claims, controversies, disputes, the same language in the arbitration provision that later comes about, have to be submitted to a court in Texas. That's right. But if you continue to read on, it says, hereby irrevocably agrees that service or process may be made in any legal proceeding relating to arising out of this agreement. It's talking about for legal proceedings. That part is. Well, in fairness, it's all the same provision, so we read it together. And all of . . . But you have to give effect to the claims, controversies, disputes language, right? Well, claims, controversies, disputes in any legal proceeding, I don't think we can separate them out as separate things. It's one paragraph, a lengthy paragraph. But aside from how you interpret it, you do agree that provision, whether it's called forum selection or a broader dispute resolution, you agree that's still in effect, because that's why you're here in New Orleans today and not arguing this out in California today, right? Yes, it's in effect. And it was always in effect. This court held in personal security that a forum selection clause and a binding arbitration provision, when the binding arbitration provision said for legal proceedings, is harmonized. This court . . . But the amendment doesn't substitute for the forum selection clause of the original sales agreement. It's not an amendment like that. It's actually both of them are still in effect. Well, they are both in effect, but I think you . . . at least for those who clicked through, you get to the same place, because if those provisions truly do conflict, and this court has held . . . But we're supposed to look at them both. We don't just get to X out the first one. I agree. I think they are to be looked at as one contract and an attempt to harmonize them and an attempt to interpret all of them and not write out any of them. I encourage the court not to try to write out any of these provisions. I don't want the court to start carving it up. And box cement versus Holman is the other case where this court held that. Judge Davis was on that panel where the court said that these two provisions when read together are, quote, easily harmonized. The Budd case also did that. But when . . . Would it be illusory or unconscionable if they took the provision that was irrevocably saying how you serve process and this had changed that? Because it said irrevocably, we hereby agree for all purposes and all times, and what if the manual had changed that? I think if they're truly conflicting provisions, then you're in a contract construction of . . . because it is one contract, and you're in a contract construction of how to resolve conflicting principles in the contract. I readily agree that they're both in effect at all times. Now, for those who clicked through, which is Moen and Sharp, their click-through provision expressly says that they are agreeing to the amended terms and that if there is any conflict between the amended terms and the terms in the SDA or the BAA, the amended terms would govern. Okay. And that's different than what is the irrevocable service of process in the original. You believe it's not illusory and that we would have to say that the text requirement supersedes the other requirement? We couldn't harmonize those, really. One is contradicting the other. I don't think it makes it illusory. It may make it conflicting and ambiguous. It very well might make it that. Under general contract principles. But I don't think that automatically says it's not a bilateral promise or that it's so one-sided. You still have to analyze it in terms of either unconscionability or illusory in terms of no consideration. But what you have here is an agreement that either side can terminate on 30 days' notice. And I agree with you, Judge Elrod. There comes a point where this could be rewritten through the PPNM and the original contract ceases to exist as the contract. Or if... And that wasn't the intention of the parties. It was not the intention of the parties. But that's also not what happened here. The PPNM, there is no evidence that the PPNM was used to rewrite the BAA and the SDA. It added an arbitration provision. There was testimony from Grisco that the PPNM had been revised on numerous occasions. It had been amended on numerous occasions. For compensation to be changed, for the positive or the negative for any of the brokers or SDAs, it had to be amended through the PPNM. Because the BAA contains no compensation schedule. So the parties had to contemplate that substantive key provisions of this agreement were going to be amended through the PPNM. They wouldn't have contemplated that there would be an arbitration proceeding because you would think that this fully dealt with ADR. If you looked at this, you would have said this is a fully contemplated ADR. It's not like it's incomplete to begin with. It has non-binding mediation and then it says you go to Dallas County Court. You would tell your client if they were asking, that's how you draft it. This arbitration is something different. It's not something that was left out, that there's a gap that needs to be filled. I won't disagree with you, but it doesn't conflict. It's complementary. And this court has held that on numerous occasions. It's complementary to be in Dallas County Court and to be in binding arbitration. Well, this case proves the point. Because when this case got to Dallas County, when it was transferred, there needed to be a legal proceeding to determine whether or not arbitration would be compelled. A legal proceeding was needed for that, to compel arbitration. And there's a lot of cases that are pure forum selection clauses where it says any suit or proceeding needs to be brought in this forum, where the courts have said, right, that's not inconsistent with arbitration because there's a forum for those proceedings. Judicial proceedings need to be dealt with to decide the arbitration issues. But here, I just read it, I mean, with respect to the claims, controversies, or disputes, which are not resolved through mediation, the sales director submits to the jurisdiction of these courts. I mean, I read that as saying the controversies are submitted to the jurisdiction of the courts. And again, Judge Costa, there has to be an attempt to harmonize. There is a presumption towards harmonizing it under the contract principles. There is not a presumption of let's look at it and see if there's a possible interpretation where they do conflict. There is a possible interpretation where the court could determine they do conflict. But in an attempt to harmonize and to read all of it together as one contract, which I think everybody agrees, even the appellants agree, is the right way to look at it. In an attempt to harmonize, then they can be harmonized. This court has held that. The Beaumont Court of Appeals and Texarkana Court of Appeals have gone a step further under Texas law and said when you incorporate, when you have a form selection clause, that does not conflict with an arbitration provision unless the form selection clause expressly excludes arbitration by words. What if you're trying to harmonize, you come out and say, this is ambiguous. I can't really tell whether we can harmonize this or not. What's the analysis then? Well, the analysis for Moen and Sharp is that they clicked through, and their click through says that if there's conflicting provisions, then the amended PPM governs. So for them, if you found conflicting provisions, Moen and Sharp, in essence, have entered into a new agreement in which arbitration could amend the other provisions, even with a conflict. That's what the click through. Can you comment differently on the guy who didn't click through? Well, for Garisco, Garisco doesn't have a form selection clause in her contract. Her BAA and her SDA do not contain, the whole form selection clause we've been discussing is not in her contract. So there can't be a conflict with hers. She has non-binding mediation. Was she with them over here? What? Was she in the original California also? Yes. Why did she get sent? If she didn't have a form selection clause, why didn't she stay in California? I don't know the answer to that. She may have a venue proceeding, but she doesn't have a form selection clause. Seems like she might prefer to be in California. One might think so. I will agree. Although, we're a lovely place. What about NRAC and H News Company from Corpus Christi? Are you familiar with that case? Yes. Why isn't that applicable here? It unilaterally allows amendment of the handbook to subject claims to arbitration, and the court there said that it's allowed the ability to pick and choose claims it wanted to arbitrate or pick and choose when to arbitrate, and that that made it illusory. C&H lacks the Halliburton Savings Clause. It did not solely apply prospectively, and it did not have the notice provision. That's not why the court said it. They just said the whole methodology of allowing you to amend your handbook like that. Are you saying it's bad law? Well, I'm certainly saying it's contrary to BUDD, but the reality . . . Why does BUDD triumph? Is it because that's out of Dallas? No, I would never say that. Because BUDD is consistent with what this court has said in personal security and box cement to attempt to harmonize the principles . . . But you lose if we follow NRAC and H, don't you? Well, I think it's difficult to reconcile not being able to incorporate through policies and procedures, but that's not really a controversial concept. Virtually every court in Texas and this court have said you can incorporate through policies and procedures. Would you have been able to incorporate only certain things to be arbitrated unilaterally? Only certain claims? Yeah. Yeah, you might be able to, but then you would run into a problem of then you would truly have a gap between legal proceedings for litigated claims and arbitrable claims sitting here, but only limited certain arbitrable claims . . . You would have the power. Your client would have had the power to do that. Well, if it's not illusory, if it's a bilateral promise . . . I'm still not sure it's not illusory. Could you spend 10 or 15 seconds on that and then also on this idea that because they're former employees, they're not subject to the arbitration clause? Yeah. Illusory for an arbitration provision simply asks, for a standalone, I mean a later enacted one like this, is it a bilateral promise with valid consideration? The bilateral promise is consideration if both sides are bound by it and one side cannot unilaterally terminate it at will, on a whim, then . . . The people terminate it again? Your client could terminate it tomorrow. They can't terminate it tomorrow. They can terminate it on 10 days notice and not for existing claims. This has the exact Halliburton Savings Clause. It is word for word, and that's all the court asks in illusory. So there's no consideration necessary? The bilateral promise is the consideration if both sides are bound by it. Halliburton says that. NRA Odyssey says that too. NRA 24 out of the Texas Supreme Court says that there is, you can have in a contract, a right to unilaterally amend, and that does not invalidate the savings clause or trump somehow generally the arbitration provision and its own savings clause. I would also say, and this is in our brief, that the plaintiffs cannot establish procedural or substantive unconscionability. They have a heavy burden on that. The second part of Judge Elrod's question about this language that I think you said might be persuasive if considered in a vacuum, that the arbitration agreement just applies to IBOs and the independent business owners are defined as any person who has signed an IBO and it is active. This court said in Marlin that whenever the scope of an arbitration clause is fairly debatable or reasonably endowed, the court should decide the question of construction in favor of arbitration. The best appellants can say here. What's ambiguous about that definition though? I mean, doesn't it say active? What makes that? I agree if it's ambiguous, there's that presumption, but how is this ambiguous? Well, I think what I'd simply say is going back to what Judge Davis said, in essence, if that's truly what it means is it only applies if you are currently an IBO or an SDA, then it would be an arbitration clause that never gets used. I mean, couldn't a plausible interpretation be they were active at the time of the controversy arose? I mean, otherwise, it would just have no meaning. It would never get used. This is what arbitration would be for is a terminated agreement and commissions that might be due under the terminated agreement. Okay. Thank you, sir. Thank you. Okay. Mr. Bryce, back to you, sir. May it please the court. I just have a few points in rebuttal. First to clear up some controversy about the Budd case and what the Budd case actually stood for. The court actually, quote, said that because the record does not reflect that Max had any policies and procedures in place at the time Budd became a Max associate, we cannot conclude the arbitration clause as part of the party's underlying contract.  There would be a standalone agreement. And then the court went on to talk about the Halliburton procedures. It wasn't that the policies and procedures amended the party's original agreement. It was a standalone agreement. That's not the case here. They're arguing that they have the power to amend the agreement through the policies and procedures manual, which we're saying only for the specific purposes of the policies and procedures manual. Secondly, Your Honors, the timeline is important. As counsel just reiterated, the arbitration clause has one purpose, for terminated IBOs and for them trying to get their lifetime residual income back, which AmeriPlan summarily kept after they terminated 800 people on February 14, 2011. Eleven days before then is when the click-through PPM came out. I mean, AmeriPlan knew that they were going to get sued. They knew there was going to be a class action lawsuit. They knew that they were going to withhold lifetime residual incomes that they had already promised and through their sales director agreement, which calls for it. They knew they were going to get sued. So how to get around getting a class action? Get an arbitration clause. Everybody knows what the Supreme Court of the United States has been doing with the arbitration clauses lately. No class action. If you have an arbitration clause, there's no class action. Why not avoid that? Plus, the arbitration clause, when they had drafted it, stated that every single person that wanted to initiate arbitration had to deposit $25,000. I don't know anybody that is my client that has $25,000 to drop on an arbitration proceeding because they just got their paychecks ripped from them. The district court severed that out though, right? The district court did, but I'm talking about what AmeriPlan planned to do with this arbitration clause. This question about how to reconcile the earlier dispute resolution provision with the new agreement to arbitrate, which is just a matter of state law, or is it the second step about the scope of arbitration where there's this presumption in favor of arbitration? Where does it fit in there? Your Honor, it is the first step. Under Klein v. Neighbors, this court, Neighbors Drilling, this court found that that two-step process in harmonizing a conflict is in that murky water, and it's more apt for the first step. So the presumption in favor of arbitration does not apply when harmonizing potential conflicts to see what the parties actually agreed to. Let me ask you this. With respect to the two plaintiffs who clicked in as agreeing to the policy manual change, as I understand it, what they agreed to was if there was a conflict, they would be bound by the amendment. How do you get around that? Your Honor, we disagree with AmeriPlan counsel's light of the record. The conflict provision is on the webpage that contained a square box that held a 26-page PDF that you would have to scroll through, and in that said, warning, warning, warning, warning, you must click I accept to go to your back office. Any conflict now, the PPM and the sales director agreement, the PPM applies. Well, that's not, that's again going back to their original agreement, amending their agreement, adding a new provision. The PPM, when the parties actually contracted for their agreements in 1994, 1998, 2001, and 2006, there was not a, if the PPM supersedes or obviates or what, there was no conflict provision. So again, AmeriPlan is trying to find a way, instead of going to each individual person and saying, hey, you've got to sign an amendment to your already agreed upon agreement, here we're just going to say, we're going to amend the agreement with the PPM, add a new arbitration clause, and guess what? If there's a conflict, the new PPM applies. You don't have to sign it, you know, we'll just do it unilaterally, and that's exactly what they did. And in fact, if there is a conflict. They clicked that they agreed. You're saying they weren't, weren't, weren't obligated to read it or it's too much to read or what? Partly, Your Honor, however, that I agree button says I agree to abide by the terms of the policies and procedures manual, which tracks the actual language in the sales director agreement when it talks about the policies and procedures manual, where sales directors in 1998, 2001, 2006 says, I agree to obtain and abide by any amendments to the policies and procedures confirming their original agreement. It's not a new agreement at all. So they didn't realize that it was, had the new provisions? No Your Honor, they did not realize that. Okay. Thank you very much. Thank you, Your Honor. Thank you. You have your case. The court will stand in recess for about.